MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2017 ME 153
Docket:      Ken-16-500
Argued:      May 9, 2017
Decided:     July 11, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

DONALD BEAUCHENE

v.

STATE OF MAINE

HUMPHREY, J.

[¶1]   Donald Beauchene appeals from a judgment entered in the Superior Court (Kennebec County, *Mullen, J.*) denying his petition for discharge or modified release from psychiatric hospitalization pursuant to 15 M.R.S. § 104-A (2016).  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In 1970, Beauchene was acquitted of a murder charge by reason of a mental disease or defect and was committed to the custody of the Department of Health and Human Services, where he remains committed pursuant to 15 M.R.S. § 103 (2016).  On February 22, 2016, Beauchene filed in the Superior Court a petition seeking discharge or a modified treatment plan. The court held a hearing on the petition on September 16, 2016, at which

three mental health professionals testified.  The court denied the petition by written order dated October 24, 2016.

[¶3]  The court made the following findings of fact, which are supported by competent record evidence.  At the 1970 trial, the State presented medical experts who opined that Beauchene did not suffer from a mental disease or defect, while Beauchene presented medical experts who opined that he committed the crime due to a mental disease or defect, which they diagnosed as "explosive personality."  In June 1970, the jury found Beauchene not guilty of the murder charge by reason of mental disease or defect, and he was committed to the custody of the Department.  Beauchene escaped from the psychiatric hospital in April 1973 and was returned to Department custody in 1978.  In September 1978, Beauchene escaped from the hospital again and fled to New York.  In 1980, he was prosecuted by the State of New York for rape, sodomy, and assault and was convicted of all three charges.

[¶4]  Beauchene exhibits mental health symptoms that are consistent with anti-social personality disorder, and those symptoms have been consistent since 1970.  He demonstrates rigidness, deceitfulness, and lack of remorse for his criminal behavior, as well as a lack of insight into his criminal and mental health history.  His past behavior has raised concerns about

grooming and targeting vulnerable women and his risk of flight. The court concluded that Beauchene's mental condition has "changed very little, if any[,] since" 1970, and if discharged, released, or placed in a modified treatment plan, Beauchene would pose a risk of harm or danger to himself or to others. The court accordingly denied the petition. Beauchene timely appealed pursuant to 15 M.R.S. § 2115 (2016) and M.R. App. P. 2.

## II. DISCUSSION

### A. Sufficiency of the Evidence

[¶5] Beauchene first contends that the evidence compelled the trial court to conclude that he does not suffer from a mental disease or defect.

[¶6] "When the acquittee seeks release or discharge from Department custody, it is the acquittee's burden to establish, by clear and convincing evidence, that he 'may be released or discharged without likelihood that [he] will cause injury to [himself] or to others due to mental disease or defect.'" *Begin v. State*, 2016 ME 186, ¶ 8, 153 A.3d 93 (alteration in original) (quoting 15 M.R.S. § 104-A(1), (3)). The acquittee must establish either that (1) "the mental disease or defect by reason of which he was relieved of criminal responsibility no longer exists," or (2) he "no longer poses a danger to himself or others if he is released" despite any continuing mental illness. *Green v.*

4

*Comm'r of Mental Health & Mental Retardation*, 2000 ME 92, ¶ 27, 750 A.2d 1265 (emphasis omitted) (quotation marks omitted). The court must apply the same legal standard for mental disease or defect that applied at the time of the verdict.[1] *See In re Beauchene*, 2008 ME 110, ¶ 10, 951 A.2d 81.

[¶7] "Whether an insanity acquittee has a mental disease or defect is a factual issue . . . ." *Beal v. State*, 2016 ME 169, ¶ 6, 151 A.3d 502. "[W]e will affirm a court's determination that a petitioner remains dangerous to [himself] or others due to a mental disease or defect unless the evidence compels a contrary finding." *Id.* Because Beauchene challenges the sufficiency of the trial court's finding that he did not meet his burden, he can prevail "only if we conclude that, viewing the evidence and all reasonable inferences in the light most favorable to the court's judgment, the trial court nevertheless was compelled to find in his favor." *Begin*, 2016 ME 186, ¶ 9, 153 A.3d 93.

[¶8] Beauchene notes that at his trial in 1970, the only evidence presented of a mental disease or defect diagnosis was his own theory of an "explosive personality," and according to the State's expert witnesses at trial, anti-social personality disorder was not a clinical diagnosis that met the

---

[1] In 1970, the applicable definition of "mental disease or defect" derived from 15 M.R.S.A. § 102 (1964). *See In re Beauchene*, 2008 ME 110, ¶ 5 n.1, 951 A.2d 81.

definition of a "mental disease or defect."  He argues that the undisputed evidence presented to the trial court on his petition for release establishes that he had, and still has, an anti-social personality disorder, not "explosive personality," and because anti-social personality disorder is not a mental disease or defect, the evidence compels a finding that he does not suffer from a mental disease or defect.[2]  In other words, Beauchene does not argue that he *no longer* suffers from the mental disease or defect for which he was relieved of criminal responsibility, but rather contends that he *never did*.

[¶9]  Beauchene's argument conflates the medical evidence regarding his mental illness symptoms with the legal determination of whether he has a mental disease or defect.  *Cf. Parrish v. Colorado*, 78 F.3d 1473, 1477 (10th Cir. 1996) ("The crux of the issue . . . is not whether the acquittee must be ill in the medical sense, but whether his mental state fits a constitutionally valid legal definition.").  We have, in prior cases, rejected similar attempts to fasten a finding of a mental disease or defect to a precise clinical diagnosis of mental

---

[2]  Beauchene's experts presented his diagnosis at the murder trial as "explosive personality."  At the hearing before the trial court from which Beauchene now appeals, several expert witnesses testified about the differing psychiatric terminology used in 1970.  One doctor testified that "explosive personality" would today be classified as "intermittent explosive disorder," which is a recognized mental disease or defect, while under contemporary medical standards and definitions, anti-social personality disorder would not be considered a mental disease or defect.  According to the expert witnesses, Beauchene's symptoms were categorized as "personality disorder not otherwise specified, with mainly antisocial and narcissistic features"—symptoms that do not fit a specific diagnosis, and in particular do not entirely correspond to the psychiatric features of anti-social personality disorder.

illness.  *See Begin*, 2016 ME 186, ¶ 11, 153 A.3d 93 (noting that "a 'mental disease or defect' does not refer to any particular diagnosis on any particular psychiatric axis" and the fact that an acquittee "is no longer in the same state as existed at the time of [his] crime . . . does not necessarily establish the absence of a mental disease or defect" (quotation marks omitted)); *Green*, 2000 ME 92, ¶ 28, 750 A.2d 1265.  Beauchene does not argue that his symptoms, present since at least 1969, have subsided, but rather that those symptoms do not, as a matter of law, meet the definition of a "mental disease or defect" that can justify his continued commitment.  We disagree.

[¶10]  In delivering its verdict, the jury necessarily found, at Beauchene's urging, that Beauchene's mental health symptoms constituted a "mental disease or defect."  All three mental health professionals who testified at the petition for release hearing opined that Beauchene exhibits the same symptoms that were present in 1970, and, as a result of those symptoms, he continues to present a risk of injury to himself or to others.  In ruling on the petition, it was the exclusive domain of the trial court to determine whether Beauchene's symptoms, described by the expert witnesses, comported with a constitutionally-valid legal definition of a "mental disease or defect"—a legal concept for the court to apply to the evidence, not a medical determination.

*See Beal*, 2016 ME 169, ¶ 6, 151 A.3d 502 ("[B]ecause the term 'mental disease or defect' is a legal concept that is not defined or used by medical practitioners . . . courts—as opposed to medical experts—have the ultimate responsibility to determine whether a 'mental disease or defect' exists." (emphasis omitted)).

[¶11]  The trial court's findings that Beauchene's symptoms have remained consistent since 1970; that he thus suffers from a mental disease or defect; and that as a result of that mental disease or defect, he continues to present a risk of harm to others, are all supported by competent record evidence and thus the evidence does not compel a contrary conclusion.  The fact remains that Beauchene convinced a jury in 1970 that he suffered from a mental disease or defect, and because, as the trial court found, his mental condition has not changed and he continues to present a risk of injury, Beauchene has not met his burden for release or discharge pursuant to 15 M.R.S. § 104-A(1).[3]

---

[3] Although, as Beauchene emphasizes, "[s]ection 104-A(1) does not require a petitioner to prove a change in circumstances from the time of the not criminally responsible verdict," *James v. State*, 2015 ME 111, ¶ 8, 121 A.3d 1290, a lack of a change in Beauchene's mental health is certainly probative of whether he still suffers from the mental disease or defect for which he was relieved of criminal responsibility for murder in 1970. *James* did not mark a change in the law; we simply stated that which is apparent from the plain language of the statute—that a "substantial change in circumstances" is not an enumerated statutory requirement. *See* 15 M.R.S. § 104-A. Here, the trial court did not clearly err when it found, based on the evidence that Beauchene's condition had not changed, that he was not free of mental disease or defect. *See In re Fleming*, 431 A.2d 616, 618

8

B.    Vagueness

[¶12]    Beauchene next argues that 15 M.R.S. § 104-A is unconstitutionally vague.  Because the parties agree that this argument was not presented to the trial court and is unpreserved, we review for obvious error.  *See Gessner v. State*, 2017 ME 139, ¶ 7, --- A.3d ---; *State v. Cropley*, 544 A.2d 302, 304 (Me. 1988).  "To demonstrate obvious error, the defendant must show that there is (1) an error, (2) that is plain, and (3) that affects substantial rights."  *State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032 (quotation marks omitted).  "Even if these three conditions are met, we will set aside a [judgment] only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.* (quotation marks omitted).

[¶13]   The challenger has the burden to establish that a statute is unconstitutional and, as a general matter, we presume that a statute is constitutional.  *See State v. Reckards*, 2015 ME 31, ¶ 4, 113 A.3d 589.  "In a void-for-vagueness challenge, we do not analyze the statute to ascertain if it is valid on its face, but instead assess the challenge by testing it in the circumstances of the individual case and considering whether the statutory

(Me. 1981) ("The operative statute requires the presiding justice to . . . determine whether a petitioner is free of mental disease or defect.").

language was sufficiently clear to give the defendant adequate notice . . . ." *Id.* (quotation marks omitted).

[¶14]  Pursuant to the statute, Beauchene was required to establish "that [he] may be released or discharged without likelihood that [he] will cause injury to [himself] or to others due to mental disease or mental defect." 15 M.R.S. § 104-A(1).  Beauchene contends that the statute provides insufficient notice of what must be proved to be entitled to release.  He argues that the definitions of "likelihood" and "injury," and the indefinite time period for assessing likelihood of injury, render the statute unconstitutionally vague.

[¶15]  We conclude that the statute provides Beauchene sufficient notice and is not unconstitutionally vague.  Importantly, "[n]ot every ambiguity, uncertainty or imprecision of language in a statutory pattern" is unconstitutional, and a statute will withstand a vagueness challenge "if any reasonable construction will support it."  *Reckards*, 2015 ME 31, ¶ 5, 113 A.3d 589.  That "injury" and "likelihood" are undefined does not render the statute unconstitutional.  Instead, those broad terms enable the trial court, in its role as factfinder, to weigh the evidence and to determine whether, under the circumstances present at the time of the petition, a particular petitioner with an individualized mental health diagnosis may be safely

discharged or released into society. *See* 15 M.R.S. § 104-A(1); *Beal*, 2016 ME 169, ¶ 6, 151 A.3d 502; *see also State v. Krol*, 344 A.2d 289, 301 (N.J. 1975) (noting the vagueness and ambiguity of defining "dangerousness" and "likelihood of future harmful conduct," but emphasizing that such broad undefined standards leave specific determinations to trial courts to resolve on a case-by-case basis).

[¶16] Here, the trial court properly applied the statute and explained in clear terms why, based on Beauchene's criminal history and present mental health symptoms, he had not satisfied his burden.[4] The court emphasized that if Beauchene engages in treatment and demonstrates progress, he may be entitled to relief through another petition in the future. We discern no obvious error.

---

[4] Beauchene argues that the statute encourages arbitrary enforcement of the law. His reliance on language from our decision in *Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139, 147 (Me. 1984) is misplaced. In that case, we discarded a "beyond a reasonable doubt" standard of proof previously placed on petitioners and instead adopted a "clear and convincing" standard that balances a petitioner's liberty interest against public safety and policy concerns. *See id.* at 145-52. Section 104-A's broad statutory standards do not encourage arbitrary enforcement, but rather recognize the fact-specific nature of characterizing mental illness and gauging the potential threat posed by individuals if released into society.

C.      Due Process

[¶17]  Beauchene lastly argues that his continued confinement violates due process.[5]  In light of the trial court's finding, supported by record evidence, that Beauchene continues to suffer from a mental disease or defect that presents a risk of injury, this argument necessarily fails because "[i]t is well established that the State may confine someone who is both mentally ill and who poses a danger to society."  *Green*, 2000 ME 92, ¶ 15, 750 A.2d 1265; *see also Foucha v. Louisiana*, 504 U.S. 71, 77-78 (1992).

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant Donald Beauchene

Janet T. Mills, Attorney General, and Laura A. Yustak, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Kennebec County Superior Court docket number CV-1972-1166
For Clerk Reference Only

---

[5]  Beauchene further argues that even assuming that he poses a risk of causing injury, his confinement is not "narrowly focused" to a relevant state interest because the State could instead utilize the involuntary commitment process, *see* 34-B M.R.S. § 3864 (2016).  This argument overlooks the procedural and practical realities underpinning Beauchene's current commitment and the court's determination that he continues to suffer from a mental illness and as a result presents a risk of injury to himself or others—a finding that precludes his release or discharge from his present commitment.  *See* 15 M.R.S. § 104-A(1); *see also Foucha v. Louisiana*, 504 U.S. 71, 77 (1992) (reiterating that a committed acquittee may be held as long as he remains mentally ill and dangerous).